FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

APR 23 2008

JAMES N. HATTEN, Clerk
By: [signature]
Deputy Clerk

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

CARPENTERS HEALTH &  :
WELFARE FUND, et al.,  :
    Plaintiffs,  :
                                        :
                                        : CIVIL ACTION NO.
v.                                    : 1:00-CV-2838-WBH
                                        :
THE COCA-COLA COMPANY, et  :
al.,  :
    Defendants.  :

## ORDER

This matter is now before the Court for consideration of Defendants' two motions to exclude from evidence the April 18, 2005, Order of the Security and Exchange Commission (the SEC Order) with respect to this Court's consideration of class certification, [Doc. 418], and with respect to consideration of summary judgment, [Doc. 532]. Defendants contend (1) that the SEC Order is a civil consent decree and, as such, is evidence of a compromise or offer to compromise which is inadmissible under Fed. R. Evid. 408 and (2) that the SEC Order constitutes inadmissible hearsay that does not satisfy any exception to the hearsay rule.

Having reviewed the SEC Order and the parties' briefs, this Court concludes that the SEC Order is not admissible.

AO 72A
(Rev.8/82)

## Background

According to published media reports, in 2004 the Securities and Exchange Commission (SEC) opened an investigation into allegations that, *inter alia*, the Coca-Cola Company (Coca-Cola) had engaged in channel stuffing. See, e.g., ATLANTA BUSINESS CHRONICLE, SEC Investigating Coca-Cola, Jan. 14, 2004. The SEC concluded its investigation, and Coca-Cola submitted an offer of settlement which the SEC accepted. Pursuant to the settlement, the SEC issued the SEC Order. Available at http://www.sec.gov/litigation/admin/33-8569.pdf.

In the SEC Order, the SEC found that at or near the end of each reporting period between 1997 and 1999, Coca-Cola engaged in an undisclosed channel stuffing scheme in Japan known as "gallon pushing" whereby Coca-Cola offered Japanese bottlers incentives to induce those bottlers to purchase beverage concentrate earlier than the bottlers otherwise would have. As a result of the channel stuffing, the SEC found that Coca-Cola artificially met certain earnings estimates in order to manipulate its share price and put future earnings at risk.

The SEC further found that Coca-Cola made material false and misleading statements in connection with the channel stuffing on forms filed with the SEC. As a result, the SEC concluded that Coca-Cola violated §§ 17(a)(2) and 17(a)(3) of the Securities Act of 1933 and § 13(a) of the Securities Exchange Act of 1934.

AO 72A
(Rev.8/82)

Accordingly, the SEC ordered Coca-Cola to cease and desist from committing such violations in the future and mandated that Coca-Cola adopt certain reforms to encourage the proper disclosure of material information. Coca-Cola was not fined or otherwise punished.

Significant to the matter at issue, Coca-Cola did not admit to any of the SEC's findings, and the SEC Order's findings and conclusions were not challenged or adjudicated by Coca-Cola. According to the SEC Order, the findings therein were "made pursuant to Coca-Cola's Offer of Settlement and are not binding on any other person or entity in this or any other proceeding." SEC Order at 2 n.1. Notably, Defendants Ivester, Chesnut, and Daft were not parties to the SEC proceedings and thus had no opportunity to contest the settlement and resulting Order.

According to Defendants, "the SEC did not allow [Defendants] to confront and cross-examine many of the witnesses on whose testimony the [SEC] Order presumably is based. Nor did the SEC allow [Defendants] to examine much of the evidence that serves as a basis for the findings in the [SEC] Order." [Doc. 532 memorandum at 5].

## Discussion

Federal Rule of Evidence 408

Federal Rule of Evidence 408 provides:

3

Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations. This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct criminal investigation or prosecution.

The Advisory Committee's Note to Rule 408 states that the main rationale for this rule is the "promotion of the public policy favoring the compromise and settlement of disputes." The Eleventh Circuit held that "[t]he test for whether statements fall under this rule is 'whether the statements or conduct were intended to be a part of the negotiations toward compromise.'" Blu-J, Inc. v. Kemper C.P.A. Group, 916 F.2d 637, 642 (11th Cir. 1990) (quoting Ramada Dev. Co. v. Rauch, 644 F.2d 1097, 1107 (5th Cir. 1981)).

In Ramada Dev. Co. v. Rauch, 644 F.2d 1097 (5th Cir. 1981),[1] the Fifth Circuit upheld a district court's exclusion from evidence of a report prepared – in an

---

[1] The Ramada case was decided before the close of business on September 30, 1981, and is thus binding precedent in this court under Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir.1981) (en banc).

4

unsuccessful settlement attempt – by an architect in a construction dispute. Id. at 1106. The Fifth Circuit discussed Rule 408 by noting that

> The previous common law rule held that admissions of fact made in negotiations were admissible "unless hypothetical, stated to be 'without prejudice,' or so connected with the offer as to be inseparable from it." Advisory Committee Notes, 28 U.S.C.A. Federal Rules of Evidence, rule 408. After the House Committee rejected a proposed deviation from the common law rule, the Senate Committee amended the proposed rule, by inclusion of the language emphasized in the above quote, because
>
>> The real impact of this (House) amendment however, is to deprive the rule of much of its salutory effect. The exception for factual admissions was believed by the Advisory Committee to hamper free communication between parties and thus to constitute an unjustifiable restraint upon efforts to negotiate settlements the encouragement of which is the purpose of the rule. Further, by protecting hypothetically phrased statements, it constituted a preference for the sophisticated, and a trap for the unwary.
>
> S.Rep.No. 1277, 93d Cong., 2d Sess., reprinted in (1974) U.S. Code Cong. & Ad. News 7051, 7057. The present rule fosters free discussion in connection with such negotiations and eliminates the need to determine whether the statement if not expressly qualified "falls within or without the protected area of compromise;" the question under the rule is "whether the statements or conduct were intended to be part of the negotiations toward compromise." 2 J. Weinstein & M. Berger, Weinstein's Evidence P 408(03), at 408-20 to -21 (1980).

Id.

The Fifth Circuit went on to hold that the architect's report was not subject to one of the exceptions under Rule 408 because "the document . . . would not have

existed but for the [settlement] negotiations." Id. at 1107. In response to the appellant's argument that Rule 408 does not require exclusion of the evidence "when the evidence is offered for another purpose (other than proving the existence of [liability])," the Fifth Circuit noted that "this provision, surely, was not intended to completely undercut the policy behind the rule." Id. (citing 2 J. Weinstein & M. Berger, WEINSTEIN'S EVIDENCE P 408(05), at 408-25 to -26 for the proposition that the "court 'should weigh the need for such evidence against the potentiality of discouraging future settlement negotiations'").

With respect to the instant action, this Court must acknowledge the high public policy value of encouraging entities and individuals to settle their disputes with the SEC and similar governmental agencies charged with the regulation of industry. It is clear, for example, that the investing public, through the SEC's efforts, benefitted from the settlement memorialized in the SEC Order.[2] Coca-Cola's business operations

---

[2] In the SEC Order, Coca-Cola agreed to implement the following reforms:

a. Coca-Cola has established an Ethics & Compliance Office to administer its Code of Business Conduct and ensure, among other things, that the Respondent conducts its business in compliance with the Code of Business Conduct and with various laws;

b. Coca-Cola has established a Disclosure Committee to assist its Chief Executive Officer and Chief Financial Officer in fulfilling their responsibility for oversight of the accuracy and timeliness of the disclosures made by Coca-Cola;

are now more transparent, and Coca-Cola investors are better informed and more likely to learn of material information.

Admitting the SEC Order into evidence in this matter would likely have a chilling effect on future attempts by the SEC to settle similar cases as companies that are the subject of an SEC investigation would necessarily weigh the benefits of a settlement against the possible damage that the settlement would do to their prospects in pending or future litigation.

Moreover, the SEC Order is itself a document memorializing a settlement agreement which would not have existed absent the settlement. See Ramada, 644 F.2d at 1107. In the SEC Order, Coca-Cola acquiesces to the SEC's findings of fact and conclusions of law. In this context, this Court can see no material difference between those findings and conclusions on the one hand and statements made during a

---

    c.    Coca-Cola now requires that its divisions certify quarterly that they have not changed or extended payment terms for any bottler or customer and have not granted any special or unusual credit terms or incentives to any bottler or customer, unless they received approval for such terms; and

    d.    Coca-Cola's Audit Committee employs independent counsel experienced in securities laws disclosure issues and will continue to employ such experienced legal counsel chosen by the Audit Committee. Such counsel shall advise the Audit Committee as to implementation of the undertakings in this Order.

[SEC Order at 10].

settlement conference on the other. As such, this Court finds that the SEC Order falls squarely into the class of evidence deemed inadmissible pursuant to Rule 408.

This Court recognizes that in a case cited and heavily relied upon by Plaintiffs, Option Resource Group v. Chambers Development Co., Inc., 967 F. Supp. 846 (W.D. Pa. 1996), the Western District of Pennsylvania held that while Rule 408 mandated the exclusion of "evidence pertaining to the fact of compromise and settlement of the SEC administrative proceedings and the Consent and Final Judgment issued in the related civil proceeding in this Court," the court found that, for the purposes of summary judgment,[3] "the findings and opinions/conclusions of the SEC, being rendered pursuant to the SEC's independent obligations to enforce the securities laws and not as a part of the actual compromise negotiations, are not governed by Rule 408." Id. at 850. In response, this Court first notes that in support of its statement that the SEC's findings and conclusions were admissible, the court in Option Resource cited to Affiliated Mfrs., Inc. v. Aluminum Co. Of America, 56 F.3d 521, 527 (3d Cir. 1995). However, as far as this Court can determine, Affiliated Manufacturers had nothing whatever to do with the matter at issue in Option Resource. The discussion in Affiliated Manufacturers concerned whether a series of communications between

---

[3] The court reserved its ruling on whether the SEC's findings of fact were admissible at trial. Option Res., 967 F. Supp. at 850.

8

the parties constituted settlement negotiations such that Rule 408 would apply in the first instance.

Second, this Court, for the reasons noted above, simply disagrees with the Option Resource holding that the SEC's legal conclusions and factual determinations are not governed by Rule 408. In reaching this conclusion, the court in Option Resource relied on the fact that the SEC rendered its "findings and opinions/conclusions ... pursuant to the SEC's independent obligations to enforce the securities laws and not as part of the actual compromise negotiations." Option Resource, 967 F. Supp. at 850. However, under that line of reasoning, the entire consent agreement would be admissible because everything that the SEC does is (or at least should be) done pursuant to its obligation to enforce the securities laws. Moreover, this Court does not agree with the premise articulated in Option Resource that the fact that the SEC made its findings and conclusions pursuant to some independent statutory responsibility removes those findings and conclusions from the ambit of Rule 408. There is nothing in Rule 408 or the comments to indicate that such an exception to the Rule exists. Rather, the court in Option Resource seems to have grafted the hearsay exception in Rule 803(8)(C) – which allows admission of hearsay evidence that is "factual findings resulting from an investigation made pursuant to authority granted by law" – onto Rule 408. However, Rule 803(8)(C) is not a back

door vehicle for the introduction of evidence which is otherwise inadmissible. The SEC Order resulted directly from Coca-Cola's offer to settle the matter, and as such, the SEC Order is governed by Rule 408.

Plaintiffs also cite to Commodity Futures Trading Commission v. Heffernan, 245 F. Supp. 2d 1276, 1292 n.25 (S.D. Ga. 2003) and Steadman v. SEC, 603 F.2d 1126, 1136 (5th Cir. 1979)[4] for the proposition that "the Commission's construction of the securities laws *in settled cases* as well as litigated ones *is entitled to great weight*." [Doc. 552 at 1 (emphasis in original)]. However, the issue in both Heffernan and Steadman was the precedential value of the SEC's and CFTC's construction of the securities laws. For example, the court in Heffernan cited to a CFTC consent decree, which decree was entirely unrelated to the matter before the court, for the proposition that a particular regulation did not contain a scienter requirement. Neither

---

[4] As to the other cases cited by Plaintiffs for the proposition that the SEC Order is admissible, McDaniel v. Bear Stearns & Co., Inc., 196 F. Supp. 2d 343 (S.D.N.Y. 2002), concerned an arbitration panel that was not bound by the Federal Rules of Evidence, id. at 366; Bear Stearns & Co., Inc. v. 1109580 Ontario, Inc., 318 F. Supp. 2d 199 (S.D.N.Y. 2004), affirmed an arbitrator's decision to exclude portions of an SEC consent order, but the issue regarding the admitted portions of the order was not discussed; Wegerer v. First Commodity Corp. of Boston, 744 F.2d 719 (10th Cir. 1984), concerned a private consent decree that was admitted for the limited purpose of demonstrating knowledge to establish fraud; and United States v. Gilbert, 668 F.2d 94 (2d Cir. 1981) concerned an SEC consent order admitted for the purpose of showing that a criminal defendant had knowledge of SEC reporting requirements.

case has anything to do with the issue of whether a consent decree could be admitted into evidence.[5]

Federal Rule of Evidence 403

This Court further finds that the introduction of the SEC Order into evidence would be unduly prejudicial to Defendants given the order's limited probative value. According to Rule 403, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

Obviously, the SEC Order is highly prejudicial to Defendants as it provides significant detail regarding the alleged Japanese channel stuffing. Given the nature of the SEC Order, this Court finds this prejudice to be unfair. The SEC Order has three main components: (1) findings of fact, (2) conclusions of law, and (3) the remedial measures that Coca-Cola has taken since the investigation began.

---

[5] Indeed, in their footnote 3, Plaintiffs argue that the "SEC's finding that Coke's failure to disclose its channel stuffing conduct was misleading has strong *precedential* value . . . ." [Doc. 552 at 2 n.3 (Emphasis added)]. We are not concerned here, however, with precedential value but with evidentiary admissibility.

The findings of fact do not have significant probative value because Defendants were not permitted to challenge those findings by examining the witnesses that the SEC relied on and because Defendants did not have the opportunity to present their own evidence. Wilson v. Attaway, 757 F.2d 1227, 1245 (11th Cir. 1985) (report excluded for a variety of reasons including failure to afford possibility of cross-examination). The SEC Order also fails to indicate what evidence supported its findings such that this Court has no way to measure the relative reliability of each finding — some findings may be supported by ample evidence while others may be supported by only suspicion. Further, the SEC's failure to detail the evidentiary support for its findings renders Defendants' job of challenging those findings much more difficult. See Denny v. Hutchinson Sales Corp., 649 F.2d 816, 821-22 (10th Cir. 1981) (report of *ex parte* investigation inadmissible because investigation lacked formal procedures).

Plaintiffs argue that the findings in the SEC Order are "fully corroborated by highly credible evidence," [552 at 14], and that may well be the case. However, the SEC Order itself references none of that evidence. Moreover, as their brief indicates, Plaintiffs have access to that evidence and presumably use that evidence in support of their opposition to Defendants' summary judgment motion. It is clearly the better

AO 72A
(Rev.8/82)

course for this Court to evaluate the source evidence independently of the SEC's interpretation of what the evidence means.

With respect to the conclusions of law, legal conclusions in public reports are inadmissible. Hines v. Brandon Steel Decks, Inc., 886 F.2d 299, 302-03 (11th Cir. 1989). "Legal conclusions are inadmissible because the jury would have no way of knowing whether the preparer of the report was cognizant of the requirements underlying the legal conclusion and, if not, whether the preparer might have a higher or lower standard than the law requires." Id. The possibility for confusion with respect to the SEC Order is magnified because the SEC's legal standard for determining liability differs from that applicable in the instant action in that the SEC's ultimate determination that Coca-Cola's channel stuffing violated the securities laws did not include a scienter requirement. Also, the legal conclusions set forth in the SEC Order are based upon findings of fact which, as is noted above, are suspect.

Finally, the subsequent remedial measures that Coca-Cola agreed to undertake as part of its settlement with the SEC are inadmissible under Fed. R. Evid. 407. See Higginbotham v. Baxter Intern., Inc., 495 F.3d 753, 760 (7th Cir. 2007) (in investor securities fraud class action, applying Rule 407 to exclude evidence of remedial accounting changes made by defendant after class period).

AO 72A
(Rev.8/82)

Given these evidentiary shortcomings, this Court must conclude that admission of the SEC Report would be unfairly prejudicial to Defendants, especially to Defendants Ivester, Chesnut, and Daft who were not parties to the SEC proceedings.

Federal Rule of Evidence 404

This Court recognizes that the SEC Order or portions thereof may be admissible for certain limited purposes such as, for example, to demonstrate that Defendants were on notice of the document's contents. See United States v. Gilbert, 668 F.2d 94, 97 (2nd Cir. 1981) (SEC civil consent decree admissible to show defendant was aware of SEC reporting requirements). However, this Court disagrees with Plaintiff's assertion that the SEC Order is admissible under Fed. R. Evid. 404(b), which states that

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

14

The SEC Order is not evidence of other crimes, wrongs, or acts; it is the legal conclusion of an outside party regarding precisely one of the matters at issue before this Court. As such, Rule 404(b) does not apply.

## Conclusion

For the foregoing reasons, this Court concludes that the SEC Report is not admissible as to consideration of class certification and as to consideration for summary judgment. Accordingly,

**IT IS HEREBY ORDERED** that Defendants' motions, [Doc. 418, 432], are **GRANTED**.

**IT IS SO ORDERED**, this 23 day of April, 2008.

_____
WILLIS B. HUNT, JR.
SENIOR UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)