# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| ) | |
| **CARPENTERS HEALTH &** ) | |
| **WELFARE FUND**, *et al*. **v.** ) | **File No. 1:00-CV-2838-WBH** |
| **THE COCA-COLA COMPANY**, *et al.* ) | |
| ) | |

## STIPULATION AND AGREEMENT OF SETTLEMENT

# INDEX TO EXHIBITS

[Proposed] Order Preliminarily Approving Settlement
and Providing for Notice................................................................... Exhibit A

Notice of Pendency of Class Action and of Proposed
Class Action Settlement.................................................................... Exhibit B

Publication Notice............................................................................ Exhibit C

Proof of Claim.................................................................................. Exhibit D

[Proposed] Order and Final Judgment ............................................. Exhibit E

This Stipulation and Agreement of Settlement (the "Stipulation"), dated June 26, 2008, is made and entered into by and among the Lead Plaintiffs (*see* § V(1)(1.16) below) on behalf of themselves, the Intervenor Plaintiff (*see* § V(1)(1.15) below), and the Settlement Class (*see* § V(1)(1.30) below)), on the one hand, and defendants The Coca-Cola Company, a Delaware corporation ("TCCC" or the "Company"), M. Douglas Ivester ("Ivester"), Jack L. Stahl ("Stahl"),[1] James E. Chestnut ("Chestnut"), and Douglas N. Daft ("Daft"), on the other hand.  Lead Plaintiffs, on behalf of themselves, the Intervenor Plaintiff, and the Settlement Class, are referred to collectively as the "Plaintiffs".  Ivester, Stahl, Chestnut, and Daft are referred to collectively as the "Individual Defendants".  TCCC and the Individual Defendants are referred to collectively as the "Defendants".  Plaintiffs and Defendants are referred to collectively as the "Parties".

This Stipulation is intended fully, finally, and forever to resolve, discharge, and settle the Settled Claims (*see* § V(1)(1.31) below) against the Released Parties (*see* § V(1)(1.29) below) and the Settled Defendants' Claims (*see* § V(1)(1.32) below) with prejudice and without costs, upon and subject to the terms and

---

[1] Stahl was dismissed with prejudice from the Consolidated Action by order dated March 19, 2008.  The agreements and releases in that order continue in full force and effect, and nothing in this Stipulation supersedes or replaces them.  Stahl is participating in the Settlement for the sole purpose of receiving the benefits of the Settlement Class-wide release.

conditions in this Stipulation, and subject to the approval of the United States District Court for the Northern District of Georgia (the "Court").

## I.     THE LITIGATION

On or after October 27, 2000, the following actions were filed in the Court as putative class actions on behalf of certain persons who purchased the common stock of TCCC:

> Carpenters Health & Welfare Fund of Philadelphia & Vicinity v. The Coca-Cola Company, M. Douglas Ivester, Jack L. Stahl and James Chestnut, Civil Action No. 1:00-CV-2838-WBH; and
>
> Gaetan Lavalla v. The Coca-Cola Company, M. Douglas Ivester, Jack L. Stahl and James E. Chestnut, Civil Action No. 1:00-CV-2998-WBH.

(collectively the "Actions").

On December 26, 2000, institutional investors Carpenters Health & Welfare Fund of Philadelphia & Vicinity ("Philadelphia Carpenters") and Local 144 Nursing Home Pension Fund (now known as 1199 SEIU Greater New York Pension Fund) ("Local 144") moved for appointment as lead plaintiffs. On January 9, 2001, the Court ordered the Actions, and any subsequently filed related actions, consolidated for all purposes under the caption Carpenters Health & Welfare Fund v. The Coca-Cola Company, et al., Civil Action File No. 1:00-CV-2838-WBH (the "Consolidated Action") and provided for the filing of a

2

Consolidated Amended Complaint. On May 7, 2001, the Court appointed Philadelphia Carpenters and Local 144 as lead plaintiffs for the putative class.

The Consolidated Class Action Complaint (the "Consolidated Complaint") was filed on or about July 25, 2001. The Consolidated Complaint asserted violations of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and SEC Rule 10b-5. The Consolidated Complaint named TCCC, Ivester, Stahl, Chestnut, and Daft as defendants and alleged that certain material facts concerning TCCC and the condition of its business and financial results were misrepresented and omitted from various public statements purportedly made by the Defendants during the Class Period (*see* § V(1)(1.6) below). The Consolidated Complaint claimed that the alleged misrepresentations and omissions caused the price of TCCC stock to be inflated artificially during the Class Period to the alleged injury and damage of the Plaintiffs and the Settlement Class.

By order dated August 20, 2002, the Court granted in part and denied in part Defendants' motion to dismiss the Consolidated Complaint and granted Plaintiffs leave to amend. The Court denied Defendants' subsequent motion for partial reconsideration of that order on April 15, 2003.

The Amended Consolidated Class Action Complaint ("Amended Consolidated Complaint") was filed on or about June 2, 2003. The allegations of

3

the Amended Consolidated Complaint are substantially the same as those in the Consolidated Complaint.

By order dated March 31, 2004, the Court granted in part and denied in part Defendants' motion to dismiss the Amended Consolidated Complaint and denied Plaintiffs leave to amend further. TCCC and the Individual Defendants answered the Consolidated Amended Complaint on July 2, 2004, denying its substantive allegations and claims and asserting various defenses.

Philadelphia Carpenters and Local 144 moved the Court on August 9, 2004 for an order certifying the Consolidated Action as a class action under Federal Rule of Civil Procedure 23. That same day, institutional investor Southwest Carpenters Pension Trust Fund ("Southwest Carpenters") moved to intervene as an additional putative class representative and joined in the class certification motion. By order dated December 2, 2004, the Court granted Southwest Carpenters' motion to intervene.

During the more than three year period between May 2004 and September 2007, the Parties engaged in extensive fact and expert discovery. During that time and thereafter, the parties from time-to-time discussed the possibility of settlement. The Parties also participated in several mediation sessions aided by the Honorable Layn Phillips, a mediator with extensive experience mediating complex cases like

4

the Consolidated Action.  After extensive, arms-length negotiations, an agreement in principle to settle the Consolidated Action was reached on May 23, 2008. Plaintiffs' class certification motion and Defendants' summary judgment motions were pending at the time the agreement in principle to settle the Consolidated Action was reached and remain pending.

## II.    DEFENDANTS' POSITION CONCERNING SETTLEMENT

Throughout this litigation, Defendants have denied and continue to deny all substantive allegations of wrongdoing and liability pleaded against them in the Amended Consolidated Complaint.  Defendants believe that their defenses to the claims asserted against them are strong and that they would prevail either on their pending motions for summary judgment or at trial.  Defendants, however, have taken into account the uncertainty and risks of litigation, especially in a complex action such as this, as well as the difficulties and delays inherent in such litigation. Defendants have also taken into account that further conduct of the Consolidated Action could be protracted and expensive.  Defendants want the Consolidated Action fully and finally settled in the manner and upon the terms and conditions set forth in this Stipulation both to limit further expense, inconvenience, and distractions and to permit the operation of TCCC's business without further diversion related to the Consolidated Action.  Defendants, therefore, have

concluded that it is desirable and beneficial to them that the Consolidated Action be settled in the manner and upon the terms and conditions set forth in this Stipulation. Defendants' decision to enter into the Stipulation, and the Stipulation itself, shall not be construed or deemed to be an admission or concession, or evidence of an admission or concession, by any Defendant with respect to any claim of fault, liability, wrongdoing, or damage, nor shall Defendants' decision to enter into the Stipulation or the Stipulation itself be deemed an admission or concession by any Defendant of any infirmity in the defenses that Defendants have or may have asserted.

## III.    PLAINTIFFS' POSITION CONCERNING SETTLEMENT

The Lead Plaintiffs believe that the claims asserted in the Consolidated Action have merit and that the evidence developed to date, through the review of over 500,000 pages of documents produced by defendants and third parties and over 70 depositions, supports the claims. However, Plaintiffs' Lead Counsel recognize and acknowledge the expense and length of continued proceedings necessary to prosecute the Consolidated Action against the Defendants through trial and through appeals. Lead Plaintiffs also have taken into account the uncertain outcome and the risk of any litigation, especially in complex actions such as the Consolidated Action, and the difficulties and delays inherent in such

litigation. Lead Plaintiffs also are mindful of the inherent problems of proof under and possible defenses to the securities law violations asserted in the Consolidated Action. Lead Plaintiffs believe that the settlement set forth in the Stipulation confers substantial benefits upon the Settlement Class. Based on their evaluation, Plaintiffs' Lead Counsel have determined that the settlement set forth in the Stipulation is fair, adequate, reasonable, and in the best interests of the Lead Plaintiffs and the Settlement Class.

## IV. CERTIFICATION OF THE SETTLEMENT CLASS FOR SETTLEMENT PURPOSES ONLY

### 1. Certification of the Settlement Class.

The Parties agree and stipulate, subject to approval of the Court in accordance with Rule 23(e) of the Federal Rules of Civil Procedure, that the Lead Plaintiffs and the Intervenor Plaintiff shall be appointed class representatives for purposes of settlement only and that the following class (the "Settlement Class") shall be certified conditionally for settlement purposes only under Rule 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure:

> All persons or entities (and their beneficiaries) who purchased or otherwise acquired TCCC common stock from October 21, 1999 through March 6, 2000, inclusive.

Excluded from the Settlement Class are the Defendants, any entity in which Defendants have or had a controlling interest, the officers (with a title of Vice

7

President, President, or higher) and directors of TCCC, and the legal affiliates, representatives, heirs, controlling persons, successors, predecessors in interest, or assigns of any such excluded person.  Also excluded from the Settlement Class are those persons who timely and validly request exclusion from the Settlement Class.

### 2.    Revocation of Settlement Class Certification.

In the event that the Settlement upon the terms and conditions set forth in this Stipulation is not approved by the Court, is terminated, or the Effective Date (*see* § V(1)(1.10) below) does not occur for any reason, the certification of the Settlement Class automatically shall be revoked without requiring any additional action by the Parties or the Court, and the Parties shall be restored *nunc pro tunc* to their respective positions in the Consolidated Action as of May 23, 2008.  In such event, Defendants reserve their right to object for any and all reasons to the certification of any class or sub-class or to the appointment of any of the Plaintiffs as a class representative, and this Stipulation shall not be used or considered in any way in connection with class certification or class representation.

## V.    TERMS OF STIPULATION AND AGREEMENT OF SETTLEMENT

NOW THEREFORE, without any admission or concession on the part of Plaintiffs of any lack of merit of the Consolidated Action whatsoever, and without any admission or concession of any liability or wrongdoing or lack of merit in the

defenses whatsoever by Defendants, it is hereby STIPULATED AND AGREED by and among the Parties, through their respective attorneys and subject to approval of the Court in accordance with Rule 23(e) of the Federal Rules of Civil Procedure, in consideration of the benefits flowing to the Parties from the Settlement, that all Settled Claims (*see* § V(1)(1.31) below) as against the Released Parties (*see* § V(1)(1.29) below) and all Settled Defendants' Claims (*see* § V(1)(1.32) below) shall be compromised, settled, released, and dismissed with prejudice, upon and subject to the following terms and conditions:

## 1.    Definitions

As used in this Stipulation, the following terms shall have the following meanings:

1.1    "Alternative Judgment" means an order and final judgment entered in a form not identical in all material respects to the proposed Order and Final Judgment attached as Exhibit E, but which is accepted by the Parties and none of the Parties elects to terminate this Settlement in accordance with §V(9)(9.2).

1.2    "Authorized Claimant" means a Claimant whose Proof of Claim the Claims Administrator has determined to be timely and valid.

9

1.3  "Claimant" means a person who submits a Proof of Claim form to the Claims Administrator.

1.4  "Claims Administrator" means the firm of Gilardi & Co.

1.5  "Class Distribution Order" means the order of the Court approving the administrative determinations of the Claims Administrator accepting and rejecting claims made by Claimants.

1.6  "Class Period" means the period of time beginning on and including October 21, 1999 through and including March 6, 2000.

1.7  "Court" means the United States District Court for the Northern District of Georgia.

1.8  "Defendants" means The Coca-Cola Company, M. Douglas Ivester, Jack L. Stahl, James E. Chestnut, and Douglas N. Daft.

1.9  "Defendants' Counsel" means the law firms of King & Spalding LLP, Munger Tolles & Olson LLP, and Akin Gump Strauss Hauer & Feld LLP.

1.10  "Effective Date" means the date when all the following shall have occurred:

       1.10.1      Approval by the Court of the Settlement, following Notice to the Settlement Class and a hearing, as prescribed by Rule 23 of the Federal Rules of Civil Procedure; and

       1.10.2      Entry by the Court of the Order and Final Judgment or Alternative Judgment, which has become a Final Order.

    1.11   "Escrow Agents" means Plaintiffs' Lead Counsel.

    1.12  "Final Order" means the Order and Final Judgment or Alternative Judgment on or after the date when the last of the following shall have occurred:

       1.12.1      The expiration of the time to file a motion to alter or amend the Order and Final Judgment or Alternative Judgment under Federal Rule of Civil Procedure 59(e) has passed without any such motion having been filed;

       1.12.2      The expiration of the time in which to appeal the Order and Final Judgment or Alternative Judgment has passed without any appeal having been taken; or

       1.12.3      If such motion to alter or amend is filed or if an appeal is taken and such motion or appeal is determined in a manner as to permit the consummation of the Settlement in accordance in all material respects with the

terms and conditions of this Stipulation, then immediately after the determination of such motion or appeal so that the Order and Final Judgment or Alternative Judgment is no longer subject to any further judicial review or appeal whatsoever. For purposes of this paragraph 1.12, including its subparts, an "appeal" shall include any notice of appeal, petition for a writ of certiorari, or other notice, petition, or writ that may be filed in connection with approval or disapproval of the Settlement, but shall not include any such notices, petitions, or writs that concern only an award of attorneys' fees or attorney expenses, the reimbursement of Plaintiffs' reasonable costs or expenses, or the Plan of Allocation.

1.13    "Gross Settlement Fund" means the Settlement Fund plus any income or interest earned on the Settlement Fund.

1.14    "Individual Defendants" means M. Douglas Ivester, Jack L. Stahl, James E. Chestnut, and Douglas N. Daft.

1.15    "Intervenor Plaintiff" means Southwest Carpenters Pension Trust Fund.

1.16    "Lead Plaintiffs" means Carpenters Health & Welfare Fund of Philadelphia & Vicinity and Local 144 Nursing Home Pension Fund (now known as 1199 SEIU Greater New York Pension Fund).

1.17  "Net Settlement Fund" means the balance of the Gross Settlement Fund, net of any Taxes on the income of the Gross Settlement Fund, after the following payments have been made:

1.17.1    the attorneys' fee and expense award referred to in §§V(5)(5.1)-(5.2),

1.17.2    the reimbursement of Lead Plaintiffs' and Intervenor Plaintiff's reasonable costs and expenses referred to in §V(5)(5.3), and

1.17.3    the Notice and Administrative Costs defined in §V(1)(1.19) and referred to in §V(6)(6.2).

1.18  "Notice" means the Notice of Pendency of Class Action and Proposed Settlement, Motion for Attorneys' Fees and Settlement Fairness Hearing, which is to be sent to members of the Settlement Class in a form substantially similar to the proposed Notice of Pendency of Class Action and Proposed Settlement, Motion for Attorneys' Fees and Settlement Fairness Hearing attached as Exhibit B.

1.19  "Notice and Administrative Costs" means all reasonable expenses in connection with identifying members of the Class (including, without limitation, obtaining shareholder records), effectuating mail notice and publication notice to the Class, and the administration of the Settlement (including, without

13

limitation, the actual costs of publishing the Publication Notice, printing and mailing the Notice, reimbursements to nominal owners for forwarding notice to their beneficial owners, and the administrative expenses incurred and fees charged by the Claims Administrator in connection with providing notice and processing the submitted claims); *provided, however*, that none of these expenses shall be deemed to include an award of attorneys' fees and expenses to Plaintiffs' Counsel.

1.20  "Order and Final Judgment" means the order to be entered approving the Settlement in a form identical in all material respects to the proposed Order and Final Judgment attached as Exhibit E.

1.21  "Parties" means Defendants and Plaintiffs.

1.22  "Plaintiffs" means Lead Plaintiffs on behalf of themselves, the Intervenor Plaintiff, and the Settlement Class.

1.23  "Plaintiffs' Counsel" means Plaintiffs' Lead Counsel and all other counsel representing Plaintiffs in the Actions or the Consolidated Action.

1.24  "Plaintiffs' Lead Counsel" means Chitwood Harley Harnes LLP and Coughlin Stoia Geller Rudman & Robbins LLP.

1.25  "Plan of Allocation" means a plan or formula of allocation of the Settlement Fund whereby the Settlement Fund shall be distributed to Authorized Claimants after payment of Notice and Administrative  Costs, Taxes,

14

and such attorneys' fees, costs, expenses, and interest as may be awarded by the Court. Any Plan of Allocation is not part of the Stipulation, and Defendants shall not have any responsibility or liability with respect thereto.

1.26 "Preliminary Approval Order" means the order preliminarily approving the Settlement and directing Notice thereof to the Settlement Class in a form identical in all material respects to the proposed Preliminary Approval Order attached as Exhibit A.

1.27 "Proof of Claim" means the document in a form substantially similar to the Proof of Claim attached as Exhibit D.

1.28 "Publication Notice" means the summary notice of proposed settlement and hearing for publication in a form substantially similar to the Publication Notice attached as Exhibit C.

1.29 "Released Parties" means each of the Defendants; members of the families of M. Douglas Ivester, Jack L. Stahl, James E. Chestnut, or Douglas N. Daft; any present or former parent, subsidiary, affiliate, partner, employee, officer, executive, or director of TCCC; the present and former attorneys, advisors, trustees, administrators, fiduciaries, consultants, representatives, accountants and auditors, insurers, or agents of each of the Defendants; and the predecessors,

15

estates, heirs, executors, trusts, trustees, administrators, successors, or assigns of each of the Defendants.

1.30 "Settlement Class" and "Settlement Class Member" mean any and all persons or entities (and their beneficiaries) who purchased or otherwise acquired TCCC common stock from October 21, 1999 through March 6, 2000, inclusive. Excluded from the Settlement Class are the Defendants, any entity in which Defendants have or had a controlling interest, the officers (with a title of Vice President, President, or higher) and directors of TCCC, and the legal affiliates, representatives, heirs, controlling persons, successors, and predecessors in interest or assigns of any such excluded person. Also excluded from the Settlement Class are those persons who timely and validly request exclusion from the Settlement Class.

1.31 "Settled Claims" means any and all demands, claims, rights, causes of action, or liabilities whatsoever, whether based on federal, state, local, statutory, regulatory, or common law or any other law, rule, or regulation (whether foreign or domestic), including both known claims and Unknown Claims, accrued claims and not accrued claims, foreseen claims and unforeseen claims, matured claims and not matured claims, class or individual in nature, that have been or could have been asserted in law or in equity in any forum by the Plaintiffs, the

16

Settlement Class Members, or any of them against any of the Released Parties that are based on the purchase and/or sale of TCCC common stock and arise out of or relate in any way to the allegations, transactions, facts, matters or occurrences, representations or omissions involved, set forth, or referred to in this Consolidated Action, including, without limitation, any claims for attorneys' fees, expenses, or both, incurred in relation to any such claims; *provided however*, that the Settled Claims do not include (i) any claims to enforce the terms of this Stipulation or (ii) any claims by TCCC or its present and former directors, officers, and employees (and any other person or entity who is covered by the relevant insurance policies) against the current or former insurers of TCCC and/or such individuals.

1.32   "Settled Defendants' Claims" means any and all demands, claims, rights, causes of action, or liabilities whatsoever, whether based on federal, state, local, statutory, regulatory, or common law or any other law, rule or regulation (whether foreign or domestic), including both known claims and Unknown Claims, accrued claims and not accrued claims, foreseen claims and unforeseen claims, matured claims and not matured claims, that have been or could have been asserted in law or in equity in any forum by the Defendants against the Plaintiffs, Settlement Class Members, and their legal representatives, heirs, successors, or assigns, and/or their attorneys, and that arise out of or relate to the

17

institution, prosecution, or settlement of the Consolidated Action, *provided*

*however*, that the Settled Defendants' Claims do not include any claims to enforce

the terms of this Stipulation.

1.33   "Settlement" means the settlement of the Consolidated Action

upon the terms and conditions set forth in this Stipulation.

1.34   "Settlement Account" means the escrow account established by

Plaintiffs' Lead Counsel as Escrow Agents into which the Settlement Fund will be

deposited in accordance with § V(3)(3.1).

1.35   "Settlement Fairness Hearing" means the hearing at which the

Court will consider and determine the fairness, reasonableness, and adequacy of

the Settlement.

1.36   "Settlement Fund" means the total sum of one hundred thirty-

seven million, five hundred thousand dollars ($137,500,000).

1.37   "Taxes" means all taxes on the income of the Settlement Fund

after it is deposited into the Settlement Account, all withholding taxes imposed in

connection with distributions from the Gross Settlement Fund, and all expenses

and costs incurred in connection with the taxation of the Gross Settlement Fund

(including, without limitation, expenses of tax attorneys and accountants).

1.38  "Termination Notice" means the written notice to all other Parties of Defendants' Counsel's or Plaintiffs' Lead Counsel's election to terminate the Settlement in accordance with §V(9)(9.2).

1.39  "Unknown Claims" means any and all Settled Claims that any Plaintiff or Settlement Class Member does not know or suspect to exist in his, her, or its favor at the time of the release of the Released Parties, and any Settled Defendants' Claims that any Defendant does not know or suspect to exist in his, her, or its favor, which if known by him, her, or it might have affected his, her or its decision(s) with respect to the Settlement.  With respect to any and all Settled Claims and Settled Defendants' Claims, the Parties stipulate and agree that upon the Effective Date, the Plaintiffs and the Defendants shall expressly waive, and each Settlement Class Member shall be deemed to have waived, and by operation of the Order and Final Judgment or Alternative Judgment shall have expressly waived, any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law, including Cal. Civ. Code § 1542 or any law which is similar, comparable, or equivalent to Cal. Civ. Code § 1542, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known

19

> by him or her must have materially affected his or her
> settlement with the debtor.

Plaintiffs and Defendants acknowledge, and Settlement Class Members by operation of law shall be deemed to have acknowledged, that the inclusion of "Unknown Claims" in the definition of Settled Claims and Settled Defendants' Claims was separately bargained for and was a key element of the Settlement. Plaintiffs and Settlement Class Members may hereafter discover facts in addition to or different from those which he, she, or it now knows or believes to be true with respect to the subjects of the Settled Claims, but Plaintiffs shall expressly, and each Settlement Class Member, upon the Effective Date, shall be deemed to have, and by operation of law shall have, fully, finally, and forever settled and released any and all Settled Claims known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which now exist, which heretofore have existed upon any theory of law or equity now existing or coming to exist in the future, including, but not limited to, conduct which is negligent, intentional, with or without malice, or a breach of any duty, law, or rule, without regard to the subsequent discovery or existence of such different or additional fact.

### 2. Releases, Covenant Not to Sue, and Effect of Settlement

2.1     The obligations incurred pursuant to this Stipulation shall be in full and final disposition of the Consolidated Action and any and all Settled Claims as against all Released Parties and any and all Settled Defendants' Claims.

2.2     Upon the Effective Date, Plaintiffs and all Settlement Class Members on behalf of themselves, their heirs, executors, administrators, successors, and assigns, shall, with respect to each and every Settled Claim, release and forever discharge, and shall forever be enjoined from prosecuting, any Settled Claims against any of the Released Parties, whether or not such Plaintiffs and Settlement Class Members execute and deliver the Proof of Claim and Release.

2.3     Upon the Effective Date of this Settlement, each of the Defendants shall release and forever discharge and shall forever be enjoined from prosecuting any and all Settled Defendants' Claims.

2.4     Upon the Effective Date of this Settlement, each of the Plaintiffs and Settlement Class Members shall covenant not to sue or otherwise assert any claims brought derivatively on behalf of TCCC that concern or relate in any way to the acts, facts, statements, or omissions that were alleged in the Consolidated Action.

**3.      The Settlement Payment**

3.1    In consideration of the terms of this Stipulation, no later than thirty (30) days following the later of the entry of the Preliminary Approval Order and receipt by TCCC's counsel of wire transfer instructions and duly executed W-9 forms, TCCC shall pay or cause to be paid the Settlement Fund into the Settlement Account.

3.2    Except as provided in §§V(5)(5.1)-(5.2), the Settlement Fund, less any portion used to pay (i) any Notice and Administrative Costs incurred consistent with §V(1)(1.19) and §V(6)(6.2) or (ii) any Taxes consistent with §V(4)(4.6), shall remain in the Settlement Account until otherwise ordered by the Court.

3.3    Defendants shall not have any obligation for payment of any amount other than the Settlement Fund.

**4.    Settlement Fund Details**

4.1    Interest earned on money deposited into the Settlement Account will accumulate in favor of the Settlement Fund to be distributed in accordance with the terms of this Stipulation if the Effective Date occurs.  If the Effective Date does not occur, all interest, net of Taxes, will be returned to TCCC and TCCC's insurers pursuant to written instructions from TCCC.

22

4.2    The Gross Settlement Fund, net of any Taxes, shall be used to pay: (i) the attorneys' fee and expense award referred to in §§V(5)(5.1)-(5.2), (ii) any reimbursement of Lead Plaintiffs' and Intervenor Plaintiff's reasonable costs and expenses referred to in §V(5)(5.3), and (iii) the Notice and Administrative Costs incurred consistent with §V(1)(1.19) and §V(6)(6.2).

4.3    The Net Settlement Fund shall be distributed to the Authorized Claimants as provided in §V(6)(6.9) and §V(7)(7.1).

4.4    Any sums deposited into the Settlement Account prior to the Effective Date shall be held by Plaintiffs' Lead Counsel as Escrow Agents for the Gross Settlement Fund in accordance with the terms of this Stipulation.  All funds held by the Escrow Agents shall be deemed to be in the custody of the Court and shall remain subject to the jurisdiction of the Court until such time as the funds shall be distributed or returned in accordance with the terms of this Stipulation or further order of the Court.  The Escrow Agents shall invest any funds in excess of $100,000 in short-term instruments backed by the full faith and credit of the United States Government or fully insured by the United States Government or an agency of the United States Government and shall reinvest the proceeds of these instruments as they mature in similar instruments or funds, or both, at their then

23

current market rates.  Any funds held in escrow in an amount less than $100,000 may be held in a bank account insured by the FDIC.

4.5    The Parties agree that the Gross Settlement Fund is intended to be a Qualified Settlement Fund within the meaning of Treasury Regulation § 1.468B-1 and that the Escrow Agents, as administrator of the Settlement Fund within the meaning of Treasury Regulation §1.468B-2(k)(3), shall be responsible for (i) obtaining an employer identification number for the Gross Settlement Fund, (ii) filing tax returns for the Gross Settlement Fund, and (iii) paying from the Gross Settlement Fund any Taxes owed with respect to the Gross Settlement Fund.  The Parties and the Escrow Agents agree that the Gross Settlement Fund shall be treated as a Qualified Settlement Fund from the earliest date possible and agree to any relation-back election required to treat the Gross Settlement Fund as a Qualified Settlement Fund from the earliest date possible.  Counsel for Defendants agree to provide promptly (and in no event later than February 15, 2009) to the Escrow Agents the statement described in Treasury Regulation § 1.468B-3(e).

4.6    All Taxes shall be paid out of the Gross Settlement Fund, shall be considered (to the extent permitted by Treasury Regulation § 1.468B-2(b)(2)) to be a cost of administration of the Settlement, and shall be timely paid by the Escrow Agents without prior order of the Court.  From the Gross Settlement Fund,

the Escrow Agents shall provide for, timely pay, and indemnify each of the Defendants for, all Taxes imposed on the income earned by the Gross Settlement Fund. Notwithstanding any other provision of this section V(4)(4.6), the Lead Plaintiffs, the Settlement Class Members, and Plaintiffs' Counsel shall each be responsible for their respective Taxes owed with respect to the receipt or accrual of a payment from the Settlement Fund. Under no circumstance shall any of the Defendants have any responsibility or liability for payment of Taxes.

4.7    All risks related to the investment of the Settlement Fund shall be borne by the Settlement Fund and not by any of the Defendants.

4.8    If the Effective Date does not occur, then the Escrow Agents or their designee, at the request of TCCC, shall apply for any Tax refund owed on the Settlement Fund and pay the proceeds, after deduction of any fees or expenses incurred in connection with such application(s) for refund, at the written direction of TCCC.

### 5.    Attorneys' Fees and Expenses/Reimbursement of Lead Plaintiffs' Costs and Expenses

5.1    Plaintiffs' Lead Counsel may apply for and receive an award of attorneys' fees and reimbursement of Plaintiffs' Counsel's reasonable expenses, plus any interest on such attorneys' fees and expenses at the same rate and for the same periods as earned by the Settlement Fund (until paid), in such amounts as

may be approved and awarded by the Court from the Gross Settlement Fund.  Such award shall be paid promptly after (i) the Court's entry of the Order and Final Judgment or an Alternative Judgment or (ii) the Court's approval of the award, whichever is later, and shall be paid to Plaintiffs' Lead Counsel for allocation and distribution to Plaintiffs' Counsel in accordance with §V(5)(5.2), subject to the joint and several obligation of Plaintiffs' Lead Counsel and Plaintiffs' Counsel to repay to the Settlement Fund any and all such attorneys' fees and expenses to the extent subsequently reduced or disallowed (plus accrued interest on the amount to be repaid at the same rate as is earned by the Gross Settlement Fund) if the Effective Date occurs, or to TCCC or TCCC's insurers in accordance with written instructions from TCCC if the Effective Date does not occur.

5.2    Attorneys' fees and expenses, as awarded by the Court, will be allocated among Plaintiffs' Counsel in a fashion which, in the sole opinion of Plaintiffs' Lead Counsel, fairly compensates Plaintiffs' Counsel for their respective contributions to the prosecution of, and results obtained in, the Consolidated Action.  Defendants shall have no responsibility or liability whatsoever with respect to such allocation.

5.3    Lead Plaintiffs and Intervenor Plaintiff may apply for reimbursement from the Gross Settlement Fund, in such amounts as may be

approved by the Court, of their reasonable costs and expenses (including lost wages) directly related to their representation of the Settlement Class.

5.4    The allowance or disallowance, in whole or in part, by the Court of (i) any application by Plaintiffs' Counsel for attorneys' fees and expenses or (ii) any Lead Plaintiff's or Intervenor Plaintiff's request for reimbursement of costs and expenses to be paid out of the Gross Settlement Fund are not part of or a condition of the Settlement and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement, and any order or proceedings relating to any application for attorneys' fees or expenses or Lead Plaintiffs' or Intervenor Plaintiff's costs or expenses, or any appeal, reversal, or modification of any such order, shall not operate to terminate or cancel the Stipulation or the Settlement, affect or delay the Order and Final Judgment or Alternative Judgment from becoming a Final Order, or otherwise affect or delay the Effective Date.

5.5    Plaintiffs' Lead Counsel reserve the right to make additional applications for fees and expenses incurred.

## 6.    Administration of the Settlement

6.1    The Claims Administrator shall administer the Settlement subject to the jurisdiction of the Court.    Neither Defendants nor Defendants'

Counsel shall have any responsibility for the administration of the Settlement and they shall have no liability to the Plaintiffs, any Class Member, or any Plaintiffs' Counsel in connection with such administration.  TCCC and Defendants' Counsel shall cooperate in the administration of the Settlement to the extent reasonably necessary to effectuate its terms.

6.2    In accordance with §V(3)(3.1), Plaintiffs' Lead Counsel may pay up to three million dollars ($3,000,000) in Notice and Administrative Costs from the Gross Settlement Fund without further approval from the Defendants or further approval from the Court.  Prior to the Effective Date, Plaintiffs' Lead Counsel must receive prior approval from the Court before paying more than three million dollars ($3,000,000) in Notice and Administrative Costs from the Gross Settlement Fund.

6.3    Any Settlement Class Member who does not submit a valid Proof of Claim will not be entitled to receive any of the proceeds from the Net Settlement Fund but will otherwise be bound by all of the terms of this Stipulation and the Settlement, including the terms of the Order and Final Judgment or Alternative Judgment to be entered in the Consolidated Action and the covenants and releases provided for in this Stipulation.

6.4     The Claims Administrator shall process the Proofs of Claim and, after entry of the Class Distribution Order, distribute the Net Settlement Fund to the Authorized Claimants.  Except for TCCC's obligation to pay or cause the payment of the Settlement Fund and to cooperate in the administration of the Settlement to the extent reasonably necessary to effectuate its terms, Defendants shall have no liability, obligation, or responsibility for the administration of the Settlement, disbursement of any part of the Settlement Fund, or any costs arising therefrom.   In the interests of achieving substantial justice, Plaintiffs' Lead Counsel shall have the right, but not the obligation, to advise the Claims Administrator to waive what Plaintiffs' Lead Counsel deem to be technical defects in any Proofs of Claim submitted to the Claims Administrator.

6.5     For purposes of determining the extent, if any, to which a Settlement Class Member shall be entitled to be treated as an Authorized Claimant, the following conditions shall apply:

6.5.1 Each Settlement Class Member shall be required to submit a Proof of Claim, supported by such documents as are designated therein, including proof of the transactions claimed and the losses incurred thereon, or such other documents or proof as the Claims Administrator or Plaintiffs' Lead Counsel in their discretion may deem acceptable;

6.5.2 All Proofs of Claim must be submitted by the date specified in the Notice unless such period is extended by order of the Court. Any Settlement Class Member who fails to submit a Proof of Claim by such date shall be forever barred from receiving any payment pursuant to this Stipulation (unless, by order of the Court, a later submitted Proof of Claim by such Settlement Class Member is approved), but shall in all other respects be bound by all of the terms of this Stipulation and the Settlement, including the terms of the Order and Final Judgment or Alternative Judgment to be entered in the Consolidated Action and the covenants and releases provided for in this Stipulation. Provided that it is received before the motion for the Class Distribution Order is filed, a Proof of Claim shall be deemed to have been submitted when posted, if received with a postmark indicated on the envelope and if mailed by first-class mail and addressed in accordance with the instructions thereon. In all other cases, the Proof of Claim shall be deemed to have been submitted when actually received by the Claims Administrator;

6.5.3 Each Proof of Claim shall be submitted to and reviewed by the Claims Administrator, who shall determine in accordance with this Stipulation and the approved Plan of Allocation the extent, if any, to which each

claim shall be allowed, subject to review by the Court pursuant to Paragraph 6.5.5 below;

6.5.4 Proofs of Claim that do not meet the submission requirements may be rejected. Prior to rejection of a Proof of Claim, the Claims Administrator shall communicate with the Claimant in order to remedy the curable deficiencies in the Proofs of Claim submitted. The Claims Administrator shall notify, in a timely fashion and in writing, all Claimants whose Proofs of Claim they propose to reject in whole or in part, setting forth the reasons for its determination, and shall indicate in such notice that the Claimant whose claim is to be rejected has the right to a review by the Court if the Claimant so desires and complies with the requirements of §V(6)(6.5.5);

6.5.5 If any Claimant whose claim has been rejected in whole or in part desires to contest such rejection, the Claimant must, within thirty (30) days after the date of mailing of the notice required in §V(6)(6.5.4) above, serve upon the Claims Administrator a notice and statement of reasons indicating the Claimant's grounds for contesting the rejection along with any supporting documentation, and requesting a review thereof by the Court. If a dispute concerning a claim cannot be otherwise resolved, Plaintiffs' Lead Counsel shall thereafter present the request for review to the Court; and

6.5.6 The administrative determinations of the Claims Administrator accepting and rejecting claims shall be presented to the Court, on notice to Defendants' Counsel, for approval by the Court in the Class Distribution Order.

6.6     Each Claimant shall be deemed to have submitted to the jurisdiction of the Court with respect to the Claimant's claim, and the claim will be subject to investigation and discovery under the Federal Rules of Civil Procedure, provided that such investigation and discovery shall be limited to that Claimant's status as a Settlement Class Member and the validity and amount of the Claimant's claim.  No discovery shall be allowed on the merits of the Consolidated Action or Settlement in connection with processing of the Proofs of Claim.

6.7     Payment pursuant to this Stipulation shall be deemed final and conclusive against all Settlement Class Members.  All Settlement Class Members whose claims are not approved by the Court shall be barred from participating in distributions from the Net Settlement Fund, but otherwise shall be bound by all of the terms of this Stipulation and the Settlement, including the terms of the Order and Final Judgment or Alternative Judgment to be entered in the Consolidated Action and the covenants and releases provided for in this Stipulation.

6.8    All proceedings with respect to the administration, processing, and determination of claims described in this Stipulation and the determination of all related controversies relating thereto, including disputed questions of law and fact with respect to the validity of claims, shall be subject to the jurisdiction of the Court.

6.9    The Net Settlement Fund shall be distributed to Authorized Claimants by the Claims Administrator only after the Effective Date and after: (i) all Claims have been processed, and all Claimants whose Claims have been rejected or disallowed, in whole or in part, have been notified and provided the opportunity to be heard concerning such rejection or disallowance; and (ii) all Notice and Administrative Costs have been paid. If there is any balance remaining in the Net Settlement Fund after six months from the date of distribution of the Net Settlement Fund (whether by reason of tax refunds, uncashed checks, or otherwise), then, after the Claims Administrator has made reasonable and diligent efforts to have Settlement Class Members who are entitled to participate in the distribution of the Net Settlement Fund cash their distributions, any balance remaining shall be re-distributed among Authorized Claimants in an equitable and economic manner, if feasible, until all Authorized Claimants have recovered the full amount of their

claims, and any remainder donated to the Georgia Legal Services Foundation or a similar legal non-profit organization as approved by the Court.

6.10  Following the Effective Date, Plaintiffs' Lead Counsel will apply to the Court, with notice to Defendants' Counsel, for the Class Distribution Order.

6.11  The Court's approval of these administrative determinations and the Plan of Allocation on which they are based (described in the Notice) is not a condition of the Settlement.  The Plan of Allocation and determinations made under the Plan of Allocation shall be considered separately from the Court's consideration of whether the Settlement is fair, reasonable, and adequate and in the Settlement Class's best interests.  Any order or proceeding relating to the Plan of Allocation and determinations under the Plan of Allocation, or any appeal from any order or proceeding relating to the Plan of Allocation or any such determinations, shall not affect or delay the Effective Date or the Final Order.

## 7.     Distribution to Authorized Claimants

7.1    The Claims Administrator shall determine each Authorized Claimant's *pro rata* share of the Net Settlement Fund based upon each Authorized Claimant's Recognized Claim (as defined in the Plan of Allocation described in the Notice, or in such other Plan of Allocation as the Court approves).

7.2    Defendants will take no position with respect to such Plan of Allocation or such plan as may be approved by the Court.

7.3    This is not a claims-made settlement.  Neither Defendants nor their insurers shall be entitled to recover any of the Settlement monies once the Effective Date occurs.  Defendants shall have no involvement in reviewing or challenging claims.

7.4    No person shall have any claim against Plaintiffs' Lead Counsel, the Claims Administrator, or any other person designated by Plaintiffs' Lead Counsel based on the distributions made substantially in accordance with the Stipulation, the Settlement, the Plan of Allocation, or further order(s) of the Court. Defendants and their counsel have no responsibility or liability for distributions.

## 8.    Procedure

8.1    The parties agree to schedule a hearing with the Court for the entry of a Preliminary Approval Order as soon as reasonably possible after the execution of this Stipulation.

8.2    If the Settlement contemplated by this Stipulation is preliminarily approved by the Court, counsel for the Parties shall request that the Court: (i) approve a Notice to be sent out to the Class within thirty (30) days after the Preliminary Approval; (ii) set a Settlement Fairness Hearing approximately

sixty (60) days after the date that the Notice is mailed to the Settlement Class, or as soon thereafter as the Court determines is fair and reasonable; and (iii) enter an Order and Final Judgment after the Settlement Fairness Hearing.

### 9.    Supplemental Agreement, Waiver, or Termination

9.1    Simultaneously herewith, Plaintiffs' Lead Counsel and Defendants' Counsel are executing a "Supplemental Agreement" setting forth certain conditions under which this Settlement may be terminated by TCCC.  If those conditions are satisfied prior to the Final Settlement Hearing, then TCCC shall have the option to terminate the Stipulation in writing in accordance with the procedures set forth in the Supplemental Agreement.  The Supplemental Agreement and all of its terms are incorporated into this Stipulation (and vice versa).  Notwithstanding the provisions of this paragraph, the Stipulation shall not become null and void as a result of the election by TCCC to exercise its option to withdraw from the Stipulation pursuant to the Supplemental Agreement until the conditions set forth in the Supplemental Agreement have been satisfied.

9.2    In addition to TCCC's right to terminate the Settlement and this Stipulation in accordance with the Supplemental Agreement, Defendants or Plaintiffs' Lead Counsel shall have the right to terminate the Settlement and this Stipulation if:  (i) the Court declines to enter the Preliminary Approval Order in any

material respect; (ii) the Court refuses to approve this Stipulation or any material part of it; (iii) the Court declines to enter the Order and Final Judgment in any material respect and does not enter an Alternative Judgment; (iv) the Order and Final Judgment is modified or reversed in any material respect by the Court of Appeals or the Supreme Court; or (v) an Alternative Judgment is modified or reversed in any material respect by the Court of Appeals or the Supreme Court. If Defendants' Counsel or Plaintiffs' Lead Counsel elects to terminate, a Termination Notice shall be served on all other Parties within thirty (30) days of the date of the event described above that triggered the right to terminate.

9.3    Except as otherwise provided herein, in the event the Settlement is terminated or the Effective Date fails to occur for any reason, then the Parties to this Stipulation shall each be deemed to have reverted *nunc pro tunc* to their respective status in the Consolidated Action on May 23, 2008, except as otherwise expressly provided herein; the Escrow Agents for the Settlement Account shall immediately cause the Gross Settlement Fund, together with any accrued interest, less (i) any Taxes due with respect to such interest income; and (ii) any amounts actually incurred for Notice and Administrative Costs, to be returned to TCCC or its insurers in accordance with written instructions from TCCC; and the Parties shall proceed in all respects as if this Stipulation and any related orders had not

37

been entered; *provided, however*, that in such event, the following provisions of this Stipulation shall remain in full force and effect: §§ IV(2); V(1); V(4)(4.1), (4.5), (4.6), (4.8); V(5)(5.1); V(6)(6.2); V(9)(9.3); V(10); and V(11)(11.11), (11.16).

### 10.    No Admission of Wrongdoing

10.1    Neither the Stipulation nor the Settlement, nor any act performed or document executed pursuant to or in furtherance of the Stipulation or the Settlement: (a) is or may be deemed to be an admission of, or evidence of, the validity of any Settled Claim, or of any wrongdoing or liability of the Defendants; or (b) is or may be deemed to be an admission of, or evidence of, any fault or omission of any of the Defendants in any civil, criminal, or administrative proceeding in any court, administrative agency, or other tribunal.  Defendants may file the Stipulation and/or the Final Order in any action that may be brought against them in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

### 11.    Miscellaneous Provisions

11.1    The Parties intend the Settlement to be a final and complete resolution of all disputes asserted or which could be asserted by the Settlement Class Members against the Released Parties with respect to the Settled Claims. Accordingly, Plaintiffs and Defendants agree not to assert in any forum that the litigation was brought by Plaintiffs or defended by Defendants in bad faith or without a reasonable basis.    The Parties agree that Plaintiffs' Counsel and Defendants' Counsel have complied with and satisfied the requirements of Federal Rule of Civil Procedure 11.    The Parties reserve their right to rebut, in a manner that such party determines to be appropriate, any contention made in any public forum that the Consolidated Action was brought or defended in bad faith or without a reasonable basis.

11.2    The Parties agree that the amount paid and the other terms of the Settlement were negotiated at arm's length in good faith by the Parties, and reflect a settlement that was reached voluntarily under the supervision of an experienced mediator and after consultation with experienced legal counsel.

11.3    This Stipulation may not be modified or amended, nor may any of its provisions be waived, except by a writing signed by all Parties hereto or their successors-in-interest.

11.4   The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

11.5   The administration and consummation of the Settlement shall be under the authority of the Court, and the Court shall retain jurisdiction for the purpose of entering orders providing for awards of attorneys' fees and expenses in accordance with § V(5) and enforcing the terms of this Stipulation and related agreements.

11.6   The waiver by one party of any breach of this Stipulation by any other party shall not be deemed a waiver of any other prior or subsequent breach of this Stipulation and related agreements.

11.7   This Stipulation, its exhibits, and the Supplemental Agreement constitute the entire agreement among the Parties concerning the Settlement of the Consolidated Action, and no representations, warranties, or inducements have been made by any of the Parties concerning this Stipulation, its exhibits, and the Supplemental Agreement other than those contained and memorialized in such documents.

11.8   This Stipulation may be executed in one or more counterparts and may be executed by signature transmitted by facsimile.   All executed counterparts and each of them shall be deemed to be one and the same instrument.

40

The undersigned signatories represent that they have authority from their clients to execute this Stipulation.

11.9   This Stipulation and related agreements shall be binding upon, and inure to the benefit of, the successors and assigns of the Parties.

11.10 Nothing in this Stipulation, the Settlement, the related negotiations, the mediation sessions, or the process and content of discovery is intended to or shall be deemed to constitute a waiver of any applicable privilege or immunity, including, without limitation, the attorney-client privilege or work product immunity.

11.11 The construction, interpretation, operation, effect, and validity of this Stipulation, and all documents necessary to effectuate it, shall be governed by the internal laws of the State of Georgia without regard to conflicts of laws principles, except to the extent that federal law requires that federal law govern.

11.12 This Stipulation shall not be construed more strictly against one party than another merely by virtue of the fact that this Stipulation, or any part of it, may have been prepared by counsel for one of the Parties, it being recognized that this Stipulation is the result of arm's-length negotiations between the Parties and all Parties have contributed substantially and materially to the preparation of this Stipulation.

11.13 All counsel and any other person or entity executing this Stipulation, or any related Settlement documents, warrant and represent that they have the full authority to do so and that they have the authority to take appropriate action required or permitted to be taken pursuant to the Stipulation to effectuate its terms.

11.14 Lead Plaintiffs and Plaintiffs' Lead Counsel agree, and shall represent to the Court, that the Settlement is fair, reasonable, and adequate to the Settlement Class Members, and that it is reasonable and in the best interests of all the Settlement Class Members to enter into and be bound by the Agreement in full and final settlement of the Consolidated Action. Lead Plaintiffs shall not object to any portion of the Settlement or opt out of the Settlement Class.

11.15 Plaintiffs' Lead Counsel and Defendants' Counsel agree: (i) promptly to confer, attempt in good faith to agree upon, and execute all such documentation as may be required to seek preliminary approval of the Settlement; (ii) to seek prompt Court approval of the Preliminary Approval Order, the Stipulation, and the Settlement, and (iii) promptly to confer, attempt in good faith to agree upon, and execute all such other documentation as may be reasonably required to obtain final approval of the Settlement.

11.16 All agreements made and orders entered during the course of the Consolidated Action relating to the confidentiality of information shall survive this Stipulation.

11.17 All of the Exhibits to the Stipulation are material and integral parts hereof and are fully incorporated herein by this reference.

DATED: _____

**COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP**

_____

Patrick J. Coughlin
James A. Caputo
Steven W. Pepich
Scott H. Saham
Mary K. Blasy
Coughlin Stoia Geller Rudman &
Robbins LLP
655 West Broadway, Suite 1900
San Diego, CA 92101


**CHITWOOD HARLEY HARNES
LLP**

DATED: _____

_____

Martin D. Chitwood
Craig G. Harley
Robert Killorin
Krissi T. Gore
Chitwood Harley Harnes LLP
2300 Promenade II
1230 Peachtree Street, N.E.
Atlanta, GA 30309


**Plaintiffs' Lead Counsel**

44

DATED: _____

**COUGHLIN STOIA GELLER RUDMAN & ROBBINS LLP**

_____
Patrick J. Coughlin
James A. Caputo
Steven W. Pepich
Scott H. Saham
Mary K. Blasy
Coughlin Stoia Geller Rudman &
Robbins LLP
655 West Broadway, Suite 1900
San Diego, CA 92101


**CHITWOOD HARLEY HARNES LLP**

DATED: June 26, 2008

_____
Martin D. Chitwood
Craig G. Harley
Robert Killorin
Krissi T. Gore
Chitwood Harley Harnes LLP
2300 Promenade II
1230 Peachtree Street, N.E.
Atlanta, GA 30309


**Plaintiffs' Lead Counsel**

44

DATED: _June 26, 2008_

**KING & SPALDING LLP**

_M. Robert Thornton_

M. Robert Thornton
Jeffrey S. Cashdan
Dan S. McDevitt
David E. Meadows
Darrick L. McDuffie
1180 Peachtree Street, NE
Atlanta, GA 30309
Telephone: (404) 572-4600
Facsimile: (404) 572-5142

DATED: _____

**MUNGER, TOLLES & OLSON LLP**

_____

Ronald L. Olson
Marc T.G. Dworsky
Gregory D. Phillips
Robert L. Dell Angelo
Amy C. Tovar
355 South Grand Avenue, 35th Floor
Los Angeles, CA 90071
(213) 683-9100
**Counsel for Defendants**

DATED: _____          **KING & SPALDING LLP**


_____
M. Robert Thornton
Jeffrey S. Cashdan
Dan S. McDevitt
David E. Meadows
Darrick L. McDuffie
1180 Peachtree Street, NE
Atlanta, GA 30309
Telephone: (404) 572-4600
Facsimile: (404) 572-5142

DATED: 6/26/08 _____          **MUNGER, TOLLES & OLSON LLP**


_____
Ronald L. Olson
Marc T.G. Dworsky
Gregory D. Phillips
Robert L. Dell Angelo
Amy C. Tovar
355 South Grand Avenue, 35th Floor
Los Angeles, CA 90071
(213) 683-9100
**Counsel for Defendants**

45

DATED: _6/26/08_

*AKIN GUMP STRAUSS HAUER*
*& FELD LLP*

John M. Dowd
Jeffrey M. King
1333 New Hampshire Avenue, N.W.
Washington, D.C.  20036
(202) 887-4000

**Counsel for Defendant Douglas N. Daft**

46